BOGGS, Circuit Judge,
dissenting.
The majority in this case correctly states that defendants may be convicted under the Sabotage Act on either of two theories:
(1) They specifically intended to interfere with or obstruct the national defense or;
(2) They undertook acts knowing that it was practically certain that such interference or obstruction would take place.
However, I part company with the majority, and therefore respectfully dissent, because I believe that a rational jury could convict defendants on the first theory. The issue of intent was specifically presented to the jury, and I believe that the jury rationally applied the correct legal instruction that it was given (Was it “the defendant’s conscious desire or purpose to ... cause a certain result....”).
*1090 Further, as the majority correctly states at page 1084, a defendant can intend a result “if he consciously desires it as a result of the prohibited action.” The majority seems to have no quarrel with the instruction quoted above.
I fear that the majority imports a “de minimis” exception into the statute and orders the defendants’ acquittal under a “no (or very little) harm, no foul” theory that the statute does not support.
While courts in the relevant precedent cases have found (with some straining, in my opinion) some relatively immediate tactical effect on operational military activities, that is not what the statute requires.' In the classic example of sabotage — destroying á pallet load of artillery shells at the factory — I would not read § 2155 to require some indication of where those shells were headed or how many shells were available in the supply chain.
To be sure, in the context of America’s massive defense-industrial establishment, there is low risk of the tragedy described in Kipling’s poem, “Epitaphs of the War: Batteries Out of Ammunition”
If any mourn us in the workshop, say
We died because the shift kept holiday. Therefore, it may seem a bit overblown in our case, and in all of the cited cases, to say that the actions of the defendants would “interfere with or obstruct the national defense.” .
Nonetheless, the statute does not require some particular amount of interference or obstruction, and the tactical effects that the majority points to as distinguishing precedent cases from this one are illusory. Does anyone really believe that, if a missile launch had actually been required in the Platte case, that the protestors sitting on the silo lid would not simply have been blown away or that in the Ortiz case, there was an actual shortage of planes available? In our case, the jury heard evidence that the defendants here desired to interfere with the operations of the Highly-Enriched Uranium Material Facility exactly because it was involved in the manufacturing chain leading to the production of nuclear weapons. Nuclear weapons require highly-enriched uranium. The facility stores and makes available highly-enriched uranium and other nuclear-weapons components, even though its uranium stores were not being used for manufacturing weapons right now. Interference with the facility has the potential to obstruct the production of nuclear weapons.
In just the same way, obstructing a train carrying completed weapons to a submarine base may appear quite minimal and even quixotic — if the submarine goes to sea with twenty-three nuclear missiles instead of twenty-four, or if an extra half hour is required to move the train after removing the obstructers, it seems like pretty small beer. On the other hand, it is obviously obstructive.
The majority’s rather casual statement at pages 1085-86 that there is no effect on the national defense when there is an intrusion onto a (supposedly) highly secure military facility because “responding to intrusions is what guards do” and there would not “have been any effect on the national defense [even] if the guards had shot the defendants” seems somewhat overdone. If infiltrators invades an artillery-shell factory and, before reaching their target, are intercepted and shot, I doubt most people would say that they had not interfered with the national defense, and even fewer would say that they did not “intend” to interfere even if their intent was wholly suicidal, let alone if they had clearly stated that they desired to obstruct the production of shells.
As the majority correctly states at page 1085, we must affirm if a rational jury *1091 could find that “the defendants’ actions were ... consciously meant ... to impair the nation’s capacity to wage war.”
Testimony as to each defendant specified their intent:
Walli: “I wanted all the criminal activities to stop,” and
“I hoped to institute the rule of law” in answering the question did you hope “to interfere with the operations at Y-12”; ■ and Walli had stated that nuclear weapons were unlawful;
Boertje-Obed: “we went to ... oppose nuclear weapons directly ... [tjhrough direct action”;
Rice: “we were able to ... begin the work of disarmament”;
Their intent to obstruct and interfere, however couched and however quixotic, was thus something that a rational juror could find existed.
Defendants clearly stated that their intent was to impede, in any way that they could, the production of nuclear weapons, which they regarded as illegal, undesirable and counterproductive, and the majority, at page 1086, appears to be willing to concede an “intent” to shut down the facility for a week. The existence and degree of intent to obstruct was presented to the jury, and I would not override its judgment by declaring as a matter of law that no rational jury could find the intent to obstruct, simply because the obstruction here was by disrupting the general operation of the facility, rather than destroying a specific item.
Finally, I agree with the majority, at pages 1088-89, that creating bad publicity for the government is not chargeable as “obstruction” or “interference” under the Sabotage Act. However, because invading a facility involved in the production of nuclear weapons, with the intent of stopping “all the criminal activities,” even if the possibility of achieving that objective is quite minimal, is a crime, and the jury so found. I would affirm the convictions and I therefore respectfully dissent.